`

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| MARTHA JONES, | ) CIVIL ACTION NO. 9:14-4339-TMC-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Rule

73.02(B)(2)(a), (D.S.C.).

Plaintiff originally applied for Disability Insurance Benefits (DIB)[1] on May 1, 2007,

alleging disability as March 14, 2007 due to hearing loss, back problems, asthma and fibroids.

---

[1]In her brief, Plaintiff states that she also filed for Supplemental Security Income (SSI). Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits]. However, it is unclear in the decision of the ALJ or of the Appeals Council (including the Appeals Council's previous remand order) that Plaintiff's later filed application for SSI (R.pp. 301-303) was considered as part of this claim. See (R.pp. 1-3, 20-67, 186-209, 226-227).



(R.pp. 177, 179). Plaintiff's claim was denied initially and upon reconsideration, as well as by an Administrative Law Judge (ALJ) in a decision issued July 23, 2010. (R.pp. 186-209). Plaintiff appealed this decision to the Appeals Council, and in an Order dated September 6, 2012, the Appeals Council remanded the case for consideration of new evidence that had been submitted by the Plaintiff from Dr. Robert LeBlond subsequent to the date of the ALJ's decision. (R.pp. 226-227).[2]

The ALJ thereafter held a second hearing on July 2, 2013. (R.pp. 75-102). At the hearing, Plaintiff amended her alleged disability onset date to March 2, 2010. (R.p. 79). The ALJ thereafter denied Plaintiff's claim in a decision issued September 13, 2013. (R.pp. 20-67). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan,

---

[2]Plaintiff had also, since the ALJ's decision, filed a new application for DIB on September 1, 2010, in which she alleged similar impairments as in her first application, and claiming disability as of July 24, 2010 (the day after the date of the ALJ's prior decision). See (R.pp. 214-216, 297). The Appeals Council's remand order directed the ALJ to associate Plaintiff's new filing with her previous claim and issue a new decision on both applications. (R.p. 227). See also, n. 1, supra.



907 F.2d 1453, 1456 (4th Cir. 1990); <u>Richardson v. Califano</u>, 574 F.2d 802, 803 (4th Cir. 1978);

<u>Myers v. Califano</u>, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial

evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.

Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

<u>Hays</u>, 907 F.2d at 1456 (citing <u>Laws v. Celebrezze</u>, 368 F.2d 640 (4th Cir. 1966)); <u>see also</u>, <u>Hepp</u>

<u>v. Astrue</u>, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even

"less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the

Commissioner. <u>Laws</u>, 368 F.2d at 642.  "[T]he language of [405(g)] precludes a de novo judicial

proceeding and requires that the court uphold the [Commissioner's] decision even should the court

disagree with such decision as long as it is supported by substantial evidence." <u>Blalock v.</u>

<u>Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### <u>Discussion</u>

A review of the record shows that Plaintiff, who was fifty-five (55) years old on her

new alleged disability onset date (March 2, 2010), has a college degree and past relevant work

experience as a collection clerk, bank clerk/commercial credit card clerk, as well as service in the

United States Army.  (R.pp. 20, 81, 99-100, 270, 328).  In order to be considered "disabled" within

the meaning of the Social Security Act, Plaintiff must show that she has an impairment or

combination of impairments which prevent her from engaging in all substantial gainful activity for



which she is qualified by her age, education, experience and functional capacity, and which has

lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further,

Plaintiff's eligibility for DIB expired on December 31, 2011. (R.pp. 21, 33). Therefore, in order to

obtain DIB, Plaintiff must have evidence to show that her condition became disabling on or before

that date. See 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th

Cir. 2005).

After a review of the evidence and testimony in this case, the ALJ determined that,

although Plaintiff does suffer from the "severe" impairments[3] of degenerative disc disease of the

cervical and lumbar spine, degenerative joint disease of the knees, bilateral sensorineural hearing

loss, breathing impairments, including COPD, asthma, bronchitis, allergic rhinitis, and lateral

epicondylitis of the elbows, she nevertheless retained the residual functional capacity (RFC) through

her date last insured to perform a reduced range of light work.[4] (R.pp. 23, 28-29). The ALJ further

determined that the limitations caused by Plaintiff's impairments did not preclude her from

performing her past relevant work as a collections clerk and bank clerk/commercial credit card clerk

as those jobs are performed in the general economy, and that she was therefore not entitled to

disability benefits. (R.pp. 63, 66).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating

and rejecting the opinion of Plaintiff's treating physician, Dr. LeBlond; by relying on Vocational

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



Expert (VE) testimony that was not consistent with the Dictionary of Occupational Titles (DOT);[5] by relying on vocational evidence that was not proffered during the hearing and was therefore unable to Plaintiff's counsel; and that the ALJ also erred in his evaluation of her VA rating decisions. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Treating Physician Opinion)

After review of and evaluation of the objective and subjective evidence and testimony, the ALJ determined that notwithstanding her impairments, Plaintiff retained the RFC to perform light work with the ability to sit, stand, and walk up to six hours out of eight hours each during an eight hour work day; with a limitation to frequently handling and fingering, climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasionally climbing ropes, ladders and scaffolds; while avoiding concentrated exposure to temperature extremes, loud background noise, and fumes. (R.pp. 28-29). See 20 C.F.R. § 404.1545(a)(1) [defining an RFC as "the most [a claimant] can still do despite [the claimant's] limitations."]. Plaintiff argues that in coming to this conclusion, the ALJ improperly rejected the opinion of Dr. LeBlond, her treating pain

---

[5] The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job description, represents approximate *maximum* requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998).



specialist, who had opined that Plaintiff impairments caused limitations that would preclude her from all work activity.  See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [Noting importance of treating physician opinion].

After an extensive and detailed[6] review and analysis of Dr. LeBlond's records and opinion as well as the other medical and testimonial evidence in the case, the ALJ gave "little weight" to Dr. LeBlond's opinion, finding that the extent of limitation opined to by Dr. LeBlond was not supported by the evidence, including Dr. LeBlond's own medical records.  (R.pp. 61-63); see generally, (R.pp. 23-60); see also Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record].  After a careful review of the record and decision, the undersigned can find no reversible error in the ALJ's treatment of Dr. LeBlond's opinion in this case.  Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

Dr. LeBlond practices with Upstate Medical Rehabilitation.  The first entry in Plaintiff's medical records associated with Dr. LeBlond's practice is dated September 22, 2010 (six months after Plaintiff alleges she became disabled), which is an outpatient follow-up note signed by Physician's Assistant  David Goldsmith.  This follow-up note indicates that Dr. LeBlond had seen Plaintiff the previous month for a complaint of elbow pain, and that she had received a trigger point injection to the lateral epicondyle, left side.  Goldsmith noted that at that time (September 22, 2010)

---

[6]The ALJ's decision in this case is 48 single spaced typed pages.



Plaintiff was "doing much better", and that Plaintiff was uncertain if she needed another injection. Goldsmith also noted that Plaintiff had been going to physical therapy for her complaints of back pain, but that although she had been making "slow progress", that "this was discontinued". Plaintiff complained to Goldsmith that currently she was experiencing back pain made worse with prolonged standing, bending and walking. She was also experiencing some tingling in her feet, although this was "rare" and she was "doing well with the Neurontin for that". On examination by Goldsmith, Plaintiff exhibited tenderness along the right SI joint and along the greater trochanter piriformis muscle and IT band. However, Plaintiff's lower extremities "showed good strength"; she had intact sensation, station and gait; her deep tendon reflexes were equal; and straight leg raise was negative. Goldsmith diagnosed Plaintiff with chronic back pain with degenerative and mechanical components, with any injections being deferred for now. Plaintiff was to continue with her medications and follow up in four weeks. (R.p. 968).

When Plaintiff returned to see Goldsmith on October 28, 2010, she reported that over the last month she had been more physically active and that she had had "significant improvement". Plaintiff told Goldsmith that she did continue to have pain across the belt line and up the midline, usually worse with bending and lifting, with any exacerbation "depending on how much [work] she does around the house". Plaintiff was experiencing no radiation to the legs causing numbness, tingling or weakness, and had no complaints regarding her medications. Plaintiff rated her pain level as being a 6 on a 10 point scale, which was "a little higher than usual, associated with the weather". Plaintiff's physical examination was generally the same as before. Goldsmith diagnosed her with chronic back pain with improvement, and she was advised to continue with her current medications and return in three months. (R.p. 967).



When Plaintiff returned to Upstate Medical on February 15, 2011, she was again seen by PA Goldsmith. Plaintiff reported that while she was usually stiff first thing in the morning, that this condition improved after "warm-up". Pain thereafter would "vary with [her] activity level". Plaintiff reported that her back was "achy or sharp", that her neck pain was "not as bad as the other issues", and that she continued to do home exercises. On physical examination Plaintiff complained that her knees were tender along the medial joint line, and she had some crepitus on the left. Otherwise, her examination findings were consistent with her previous findings; to include good lower extremity strength, equal deep tendon reflexes, and intact sensation, station and gait. Plaintiff was to return in two months. (R.p. 966).

When Plaintiff returned on April 14, 2011, she was again seen by PA Goldsmith. Overall Plaintiff reported she was improving with "new meds", which left her with some "slight somnolence". Her knees were "better with stimulator", while her back and neck were also better. Plaintiff reported that problems with her back and neck were "moderate" in severity, that it "comes and goes", and was aggravated by physical activity. On examination Goldsmith found Plaintiff to be alert and oriented, healthy appearing, and in no acute distress. With respect to her back, she had a normal range of motion of the spine, and although she complained of tenderness in her neck, knees, and lumbar area, she had a normal gait. Neurologically she had normal sensation and strength, tone, and reflexes in all four extremities. Goldsmith assessed Plaintiff with back, knee and neck pain, and she was told to follow up in two months. (R.pp. 964-965).

On September 16, 2011, Dr. LeBlond issued a statement on his University Medical Group stationary in which he opined about Plaintiff's condition. (R.p. 963). This is the statement that precipitated the remand by the Appeals Council from the original ALJ decision after it was



submitted to the Appeals Council on appeal of that decision.  This is also the first piece of medical evidence from Dr. LeBlond in the medical record, and the only medical evidence from Dr. LeBlond during the time period Plaintiff was eligible for disability insurance benefits.[7]

In this medical statement, which is presented in narrative form, Dr. LeBlond states that he has treated the Plaintiff for approximately the past year and a half for her neck, knee, left elbow and low back pain.  Dr. LeBlond notes that Plaintiff had an MRI of her cervical spine on March 2, 2010 (which was her new claimed disability onset date) which showed bulging at C2-3 through C4-5 and facet arthropathy, and opined that this would limit Plaintiff to a lifting capacity of no more than sedentary work.[8]  Dr. LeBlond further opined that Plaintiff suffers from lateral epicondylitis in her left elbow, and that she would therefore not be able to use her left arm any more than occasionally during the workday for at least some period of time in between injections.  Dr. LeBlond also opined that due to her knee arthritis, Plaintiff would be limited to no more than sedentary work with the ability to stand or walk in combination for no more than two hours total out of an eight hour work day, while her low back pain is a "major problem" and would affect her ability to work at even a sedentary job.  Dr. LeBlond opined that Plaintiff's back pain would cause her to suffer from interruptions to her concentration sufficient to frequently interrupt tasks throughout the workday at even a sedentary job, while her neck pain would also cause her "distracting pain".  Dr.

---

[7]As previously noted, Plaintiff's eligibility for DIB expired a little over three months later, on December 31, 2011.

[8]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a) (2005).



LeBlond concluded this statement by stating that it "is noted that [Plaintiff] walks with an antalgic gait", and that "[g]iven her age and widespread problems, I support her in seeking disability benefits". (R.p. 963).

The remainder of the records from Dr. LeBlond's practice post-date the expiration of Plaintiff's eligibility for DIB. Plaintiff returned to Upstate Medical on January 3, 2012, where she was again seen by PA Goldsmith. On this visit, Plaintiff continued to complain of chronic back and knee pain, but also "admit[ed] to poor compliance with home exercise". She again had no complaints regarding her medications, while a physical examination continued to show that she had good strength in her lower extremities with equal deep tendon reflexes and intact sensation, station and gait. Plaintiff was continued on her medications, while being advised that her chronic knee pain might "benefit from routine exercise". She was to follow up in three months. (R.pp. 957-958).

Plaintiff then apparently saw Dr. LeBlond on February 2, 2012 for a "medication recheck"; (R.pp. 955-956); but did not thereafter return to Dr. LeBlond's practice until April 24, 2012, when she was seen by Physician's Assistant Christina Randall. At that time, Randall noted that Plaintiff's general appearance was "alert and oriented", that she was in no acute distress, that her neck displayed normal range of motion of the cervical spine, her extremities had no edema, that her sensations were "normal", and that psychiatrically she had an appropriate mood and affect. Plaintiff had crepitus with extension of the knees bilaterally, and complained of tenderness over her right knee and along the back. However, musculoskeletal examination revealed that she had a "normal range of motion [in] all joints". Plaintiff was continued on her medications and told to follow up in three months. (R.pp. 952-953). Plaintiff did not apparently see Dr. LeBlond again until January 2013. See (R.p. 994). This was over a year after Plaintiff's eligibility for DIB had expired.



As noted, the ALJ gave little weight to Dr. LeBlond's statement of September 16, 2011, and the undersigned can discern no reversible error in the ALJ's treatment of this evidence. First, to the extent Dr. LeBlond opines in his statement of September 16, 2011 that Plaintiff is "disabled" or "unable to work", this is an administrative finding and is therefore a determination reserved to the Commissioner. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d) ["a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].

The ALJ further noted that notwithstanding the degree of limitation opined to by Dr. LeBlond in his statement, that the clinic notes from his own practice reflect that Plaintiff's left elbow pain was "doing much better", that on examination Plaintiff had good strength in her lower extremities with equal deep tendon reflexes, that she had normal range of motion in all joints, and that she had intact sensation and gait along with negative straight leg raise tests. Although Plaintiff reported pain with movement, she was doing home exercises (and indeed was advised to do so), and reported no radiation symptoms into her legs including no numbness, tingling or weakness. On her visit of October 28, 2010, Plaintiff described the tenderness in her low back as being only "mild". Further, notwithstanding Dr. LeBlond's statement that Plaintiff's neck pain would cause her "distracting pain", Plaintiff reported on February 15, 2011 that her neck pain was not as bad as her other issues, and she had no abnormal findings regarding her upper extremities, elbows, or hands. Plaintiff's knees were also found to be better with the knee stimulator, while contrary to Dr. LeBlond's statement that Plaintiff walked with an "antalgic gait", his office records from April 14,



2011 (where she was seen by Goldsmith) reflect that Plaintiff had a "normal gait", while neurologically she had normal sensation and strength, tone, and reflexes in all four extremities. See (R.pp. 44-46, 61-63); see also (R.pp. 952-958, 964-968). See Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

Additionally, the ALJ also set forth an extensive evaluation and analysis of the other medical evidence in the record, specifically setting forth the weight given to the opinions of various treating, consulting, and non-examining physicians. (R.pp. 58-61). The ALJ also noted Plaintiff's records from the VA for the relevant time period, noting where they showed Plaintiff was exercising with treatment notes indicating that her back was "markedly improved", that Plaintiff asked to reschedule an appointment in the fall of 2010 because she was "okay" and was going on a cruise,[9] that during a physical examination in November 2010 she maintained "nearly full" range of motion while her knees lacked effusion, erythema or increased warmth, that diagnostic imaging of her knees in November 2010 showed that her medial and lateral joint compartments were well maintained while a soft tissue nodule on the left side had been stable for two years, and that there had been no significant change in her knees since her prior examination September 2008. In December 2010 Plaintiff had full bilateral range of motion in her knees. In April 2011 she had normal sensation, strength, tone and reflexes in all of her extremities, while a state agency medical consultant noted that an x-ray of Plaintiff's knee from 2010 was normal, and that she had a normal gait. During an

---

[9]This may be a scrivener's error, as this cruise may have actually been in 2009. See (R.p. 827).



examination around May 2011 Plaintiff's range of motion was generally within normal limits and she was recommended for only conservative treatment with knee braces and exercises, while examination notes from June 2011 reflected that Plaintiff's knee braces were helping some with her pain and that Plaintiff did not even use them consistently.  (R.pp. 47-49); <u>see</u> <u>generally</u> (R.pp. 221, 797-798, 827-828, 838, 846, 874-875, 892-893, 896, 964); <u>see</u> <u>Craig</u>, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; <u>see</u> <u>also</u> <u>Robinson v. Sullivan</u>, 956 F.2d 836, 840 (8th Cir. 1992)[generally conservative treatment not consistent with allegations of disability]. Further, medical records for the months immediately following the expiration of Plaintiff's eligibility for DIB continued to generally reflect that Plaintiff had normal range of motion of the neck and good extremity strength with intact sensation and gait.  (R.pp. 952, 957, 1000).

Concededly, these medical records also reflect that Plaintiff consistently complained about pain on movement and of the limitations caused by her condition, as well as that Plaintiff does suffer from a variety of ailments.  Indeed, the ALJ found that there was support in the record for Plaintiff's allegations "somewhat".  That does not, however, mean that Plaintiff is totally disabled from all work activity or that she is entitled to disability benefits.  The ALJ's job is to evaluate *all* of the evidence, and then make a fact finding as to a claimant's RFC based on that evidence.  <u>See</u> <u>Hays</u>, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; <u>Mickles v. Shalala</u>, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].  That is exactly what the ALJ did here; he evaluated the evidence of record and determined that Plaintiff's impairments, although severe, did



not prevent her from performing light work with certain limitations designed to account for the effects of her medical impairments as shown and documented in the record. Santiago v. Barnhart, 367 F.Supp.2d 728, 733 (E.D.Pa. 2005) ["There is nothing oxymoronic in finding that a plaintiff can perform a limited range of light work [where] the evidence shows that the Plaintiff can perform some, though not all, of the exertional requirements of [the light work] range"]; see also Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) [". . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8 h Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]. This Court cannot substitute its own judgment for that of the ALJ just because there may be conflicting evidence. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ["In reviewing for substantial evidence, we do not undertake to itself reweigh conflicting evidence."]; Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)[holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency].

In sum, there is substantial evidence in the case record to support the ALJ's discounting of Dr. LeBlond's statement of September 2011 because this statement was not supported by either Dr. LeBlond's own treatment records or the evidence as a whole. Krogmeier, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hepp, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"]. This Court may not overturn a decision that is supported by substantial evidence just because the record may contain conflicting evidence. Hays, 907 F.2d

14



at 1456 [where the ALJ's determination is supported by substantial evidence and free of reversible legal error, the court cannot re-weigh the evidence or substitute its own judgment for that of the Commissioner]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

Here, the ALJ properly considered and analyzed Dr. LeBlond's opinion in conjunction with the evidence as a whole, and the decision does not reflect a failure by the ALJ to properly consider the record and evidence in this case. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that he has a disabling impairment]; see also Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]. Therefore, Plaintiff's argument that the decision in this case should be reversed due to an improper evaluation of Dr. LeBlond's opinion is without merit.

## II.

### (Vocational Evidence)

Plaintiff also argues that this case should be reversed because the Vocational Expert's opinion was not consistent with the DOT, and that the ALJ failed to inquire of the Vocational Expert as to any explanation for this inconsistency as required by SSR 00-4p.

SSR 00-4p requires that, before relying on VE testimony to support a disability determination or decision, the ALJ must "[i]dentify and obtain a reasonable explanation for any



conflicts between occupational evidence provided by VEs...and information in the Dictionary of Occupational Titles (DOT)....".  SSR 00-4p further provides that "[w]hen there is an apparent unresolved conflict between VE...evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE...evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency."  This process allows the ALJ to resolve any conflicts by determining if the explanation given by the VE "is reasonable and provides a basis for relying on the VE...testimony rather than on the DOT information."

        At the hearing in this case, the Vocational Expert identified Plaintiff's past relevant work as being a collection clerk (DOT No. 241.357-010) and bank clerk/commercial credit card clerk (DOT No. 249.367-026), and further testified that Plaintiff could perform both of these jobs as actually performed or as generally performed in the national economy with her limitations.  (R.pp. 99-100).  Although Plaintiff is correct that the ALJ did not, as part of his questioning of the VE, specifically ask the VE whether or not his vocational testimony with respect to the jobs at issue conflicted with the DOT jobs identified, the Defendant argues that since, in response to the ALJ's questions, the VE specifically identified the two DOT job numbers given as being jobs that Plaintiff could perform with her limitations, that the ALJ's questioning of the VE satisfied the requirements of SSR 00-4p.  Cf. Vest v. Astrue, No. 11-47, 2012 WL 4503180, at * 2 (W.D.Va. Sept. 28, 2012) [Rejecting requirement that "the ALJ . . . need . . . use any particular 'magic words'" in his analysis]; Gassaway v. Colvin, No. 12-982, 2013 WL 2389894, at * 6 (E.D.Va. May 29, 2013) ["There is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review"] (internal



citations omitted).  The ALJ did also specifically find in his decision that "[i]n accordance with SSR 00-4p, [he had] considered whether the vocational expert's testimony [was] consistent with the information in the DOT and it['s] companion manuals.  In this instance, I find that the vocational expert's testimony is consistent with the information in the DOT".  (R.p. 65).  See also Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980) [ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs].

However, even assuming that this finding in conjunction with the ALJ questioning of the VE at the hearing could be deemed to have otherwise been  in compliance with SSR 00-4p, the ALJ's (as well as the VE's) conclusion that Plaintiff could perform her past relevant work as a bank clerk/commercial credit card processing clerk as performed in the general economy is not supported by substantial evidence, as this position as defined by the DOT requires "constant" handling, while the RFC assigned by the ALJ in this case included the limitation that Plaintiff could handle only on a "frequent" basis.  (R.p. 29); see DOT No. 249.367-026 [Setting forth that this job requires "constant" handling].  Even so, although the ALJ's finding that Plaintiff could perform her past relevant work as a bank/credit card clerk as that job is generally performed in the economy was in error, a plain reading of the requirements for the performance of Plaintiff's other past job of collection clerk (DOT No. 241.357-010) as performed in the general economy does not require the performance of handling in excess of the RFC assigned by the ALJ in this case.  Therefore, there was no requirement under SSR 00-4p for the ALJ to elicit a reasonable explanation for any unresolved conflict between the VE evidence and the DOT with respect to this job, because there was no conflict.  See SSR 00-4p, 2000 WL 1898704, at * 2 [Stating that an ALJ must elicit a reasonable explanation from the VE "[w]hen there is an apparent unresolved conflict between the VE or VS



17

evidence and the DOT"].[10]

As such, to the extent that the ALJ's questioning of the VE could be deemed not to meet the strict requirements of SSR 00-4p (i.e., failure to inquire on the record whether there *was* any conflict), the failure of the ALJ to properly inquire into any apparent conflict in compliance with SSR 00-4p does not warrant a reversal of the decision under the particular facts of this case. Cf. Acevedo v. Colvin, No. 12-2137, 2014 WL 197738 (D.S.C. Jan. 16, 2014) [Noting that a failure of an ALJ to properly inquire into any apparent conflict in compliance with SSR 00-4p does not automatically warrant reversal of a decision]; see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Ngarurih v. Ashcroft, 371 F.3d 182, 190 n. 8 (4th Cir. 2004) ["reversal is not required when the alleged error clearly had no bearing on the . . . substance of the decision reached."].[11]

### III.

### (Consideration of VA Evidence)

Plaintiff's final claim of error is that the ALJ erred in not giving proper weight to the Veterans Administration Records, under which she had been assigned an eighty percent (80%)

---

[10]Although Plaintiff contends that a conflict in the VE's testimony exists with respect to this position because the VE opined that Plaintiff's past work would require more than "occasional" handling and fingering, this is not a basis for reversal because the ALJ found that Plaintiff could "frequently" handle, which is a greater handling capacity than occasional. (R.pp. 29, 101).

[11]Plaintiff also complains that the ALJ referenced the OccuBrowse requirements for these jobs in his decision, when he only referred to the DOT at the hearing. However, the Defendant correctly notes that OccuBrowse is merely an electronic resource that contains the entire 1991 revised DOT plus the June 1998 Occupations previously unpublished in the DOT and data from the Bureau of Labor Statistics, and that the DOT is identical to OccuBrowse with respect to the requirements of Plaintiff's past relevant job as collection clerk.



disability rating.  See generally, (R.pp. 269-271, 384-385, 397-398).[12]  While a VA disability

determination is not binding on the SSA, Plaintiff is correct that it can nevertheless be entitled to

substantial weight.  See Bird v. Commissioner of Social Security, 699 F.3d 337, 343-344 (4th Cir.

Nov. 9, 2012) ["SSA must give substantial weight to a VA disability rating"].

        However, an ALJ "may give less weight to [a] VA disability rating [if a finding is

made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate".

Bird, 699 F.3d at 343.  Although, in doing so, it is incumbent upon the ALJ to explain his or her

rationale; see SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration

given to [the VA disability determination] in notice of decision . . ."]; cf. Kowalske v. Astrue, No.

10-339, 2012 WL 32967, at * 4 (W.D.N.Y. Jan. 6, 2012)[Noting that since the VA determination

is itself entitled to at least some evidentiary weight in addition to the other record evidence, the

adjudicator should explain the consideration given to this decision]; Jamiah v. Astrue, No. 09-1761,

2010 WL 1997886, at * 16 (N.D.Ga. May 27, 2010)[Noting that due to the significance of a VA

determination, the ALJ must state specifically the weight accorded the evidence and the reason for

his decision]; a review of the decision here confirms that the ALJ complied with this requirement

in Plaintiff's case.

---

[12]In July 2006, while Plaintiff was still working, the VA gave Plaintiff a disability rating of 20%
for hearing loss, 10% for each of her knees due to chondromalacia, 10% for cervical whiplash and
lumbosacral strain, and 10% for residuals of a head concussion and tinnitus.  (R.pp. 270-271).  In
May 2008 (two (2) years before Plaintiff alleges in her DIB application that she became disabled) she
received a 70% VA disability rating, and in March 2009 that was increased to 80%.  (R.pp. 269, 397-
398).  In September 2009, the VA rated her lumbar spine (previously lumbosacral strain) impairment
at 20%, and her cervical (previously whiplash) impairment at 20%, with other evaluations unchanged.
(R.pp. 384-385).  Plaintiff testified at the hearing that, although she had an eighty percent (80%)
disability rating from the VA, she was getting paid one hundred percent (100%) total and permanent
disability because her symptoms had increased, although when asked if the VA had formulaized the
one hundred percent (100%) disability on her part, Plaintiff responded "no, not yet".  (R.p. 82).



Specifically, the ALJ stated in his decision that he was giving "some weight" to the various VA ratings of disability in the record, even though all of these VA ratings were issued *prior* to the date Plaintiff alleges her condition became disabling for purposes of her DIB application. In doing so, even while acknowledging that VA disability determinations follow different rules from those used by the Social Security Administration, the ALJ stated that he had nonetheless "considered all the ratings in the record and [had] taken into account the medical findings upon which the ratings were based". (R.pp. 58-59). The ALJ then (as previously discussed) engaged in a very detailed and comprehensive discussion of the medical evidence to show how and why he reached the decision he did about Plaintiff's employability.

Therefore, the decision reflects that, in compliance with <u>Bird</u>, the ALJ specifically set forth the evidentiary weight he was giving to the VA disability ratings ("some weight") and his rationale for his decision. <u>See</u> SSR 06-03P, 2006 WL 2329939, at * 7 (SSA) [ALJ "should explain the consideration given to [the VA disability determination] in notice of decision . . ."]; <u>Bird</u>, 699 F.3d at 344 [ALJ "may give less weight to [a] VA disability rating [if a finding is made that] the record before the ALJ clearly demonstrates that such a deviation is appropriate]; <u>Lyall v. Chater</u>, No. 94-2395, 1995 WL 417654 at * 1 (4th Cir. 1995)[Finding no error where the ALJ's analysis "was sufficiently comprehensive as to permit appellate review"]. Plaintiff simply disagrees with the ALJ's findings and conclusions. That is not, however, a basis on which to reverse the ALJ's decision. <u>Meyer v. Astrue</u>, 662 F.3d 700, 707 (4th Cir. 2011)["Assessing the probative value of competing evidence is quintessentially the role of the fact finder"]; <u>Smith</u>, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; <u>see</u> <u>also</u> <u>Guthrie</u>, No. 10-858, 2011 WL 7583572, at * 3, <u>adopted by</u>, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial



evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough, 785 F.2d at 1149 ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing the degree to which his impairment limits his RFC], adopted by 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).  Therefore, this argument is without merit.

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  Blalock, 483 F.2d at 775.

Considered under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____

December 15, 2015                                   Bristow Marchant
Charleston, South Carolina                    United States Magistrate Judge



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

