IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Martha Jones, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 9:14-4339-TMC-BM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation (Report") of United States Magistrate Judge Bristow Marchant (ECF No. 19), made in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02 of the District of South Carolina.[1]  Martha Jones ("Jones") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  The magistrate jduge recommends affirming the Commissioner's decision.  Jones filed objections to the Report.  (ECF No. 22).  For the reasons set forth below, the court affirms the Commissioner's decision.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The facts are set forth in the administrative record and are summarized as follows. Jones was born in 1955, and was fifty-five years old on March 2, 2010, the alleged disability

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

1

onset date.[2]  (R. at 217, ECF No. 12-4; *id.* at 20, ECF No. 12-2.)  She has an associate degree in medical billing and coding, has past relevant work experience as a collection clerk and a bank clerk/commercial credit card clerk, and served in the United States Army for more than fifteen years before receiving an honorable discharge.  (*Id.* at 81, 99-100, ECF No. 12-2; *id.* at 270, ECF No. 12-6; *id.* at 701, ECF No. 13-1.)  Jones alleged disability due to "hearing loss, back problems, asthma, uterine fibroids, legs, wheezing and chest pain, diverticulitis, hemorrhoids, polyps, HTN [hypertension], obesity and allergies."  (*Id.* at 182, ECF No. 12-4.)

On May 20, 2008, Jones filed an application for DIB.  (*Id.* at 177, ECF No. 12-4.)  The application was denied initially on July 30, 2008, and again upon reconsideration on February 5, 2009.  (*Id.* at 177-82, ECF No. 12-4.)  Thereafter, Jones filed a written request for a hearing on February 20, 2009, before an administrative law judge ("ALJ").  (R. at 186, ECF No. 12-4.)  A hearing was held on January 22, 2010.  (*Id.* at 129-55, ECF No. 12-3.)  The ALJ issued a decision on July 23, 2010, finding that Jones was not disabled and could perform her past relevant work as "a personnel clerk, insurance clerk, and collections clerk, as well as clerical work in a courthouse."  (*Id.* at 208-09, ECF No. 12-4.)  Jones requested review by the Appeals Council, which subsequently issued an order on September 6, 2012, remanding the case for further proceedings to consider Jones' new evidence from one of her treating physicians, Dr. Robert E. LeBlond ("Dr. LeBlond"), a pain management specialist, that was submitted subsequent to the ALJ's decision.  (*Id.* at 225-27, ECF No. 12-4.)

---

[2] Jones originally alleged disability since March 14, 2007.  However, she later amended the alleged onset date to March 2, 2010.  (R. at 20, ECF No. 12-2.)

A second hearing was held on July 2, 2013. (*Id.* at 75-102, ECF No. 12-3.) After the hearing, the ALJ issued a decision on September 13, 2013, finding that Jones was not disabled and could perform her past relevant work as "a collections clerk and bank clerk/commercial credit card clerk." (R. at 63-67, ECF No. 12-2.) Jones' request for review by the Appeals Council was denied on September 19, 2014, making the September 13, 2013, decision of the ALJ the final action of the Commissioner. (*Id.* at 1-3, ECF No. 12-2.) Jones filed the instant action on November 8, 2014. (Compl., ECF No. 1.)

## II. REPORT AND RECOMMENDATION

In her brief to the magistrate judge, Jones argued that the ALJ erred by: (1) relying on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles; (2) relying on vocational evidence that was not proffered as evidence during the hearing and was therefore unavailable to Jones' counsel; (3) improperly evaluating the Department of Veterans Affairs' rating decision; and (4) improperly evaluating and rejecting the opinion of Dr. LeBlond. (Pl. Brief, generally, ECF No. 14.)

The magistrate judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on any of these grounds. Accordingly, the magistrate judge recommended affirming the Commissioner's decision to deny Jones' benefits. (ECF No. 19.)

## III. DISCUSSION OF THE LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. *See*

3

*Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).  Accordingly, the court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard."  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Id.* (internal citations omitted).  Hence, absent any error of law, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B.  Objections

Jones filed one objection to the magistrate judge's Report.  Jones objects to the magistrate judge's conclusion that the ALJ properly evaluated the opinions of Dr. LeBlond.  (Objections 1, ECF No. 22.)  "In evaluating medical opinions, an ALJ should examine '(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'"  *Bishop v. Comm'r of Soc. Sec.*, No. 14-1042, 2014 WL 4347190, at *1 (4th Cir. Sept. 3, 2014) (unpublished) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)).  The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is well supported by clinical and laboratory diagnostic techniques.  20 C.F.R. § 416.927(c)(2) (2016); *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (finding "a treating physician's opinion on the nature and severity of the claimed

4

impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record"). "[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight afforded to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, at *5 (1996). In conducting the substantial evidence inquiry, the court's review is limited to "whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013).

In this case, the ALJ afforded little weight to Dr. LeBlond's September 2011 opinion, stating that Jones suffered from a variety of conditions and that he "support[ed] her in seeking disability benefits." (R. at 963, ECF No. 13-3). Jones argues the ALJ erred, because he did not provide specific reasons for finding inconsistency between Dr. LeBlond's opinion and the record as a whole. Jones cites to *Littlejohn v. Colvin*, No. CIV.A. 1:14-2953-RMG, 2015 WL 1931426, at *19 (D.S.C. Apr. 28, 2015), in support of her position. However, the ALJ in *Littlejohn* made several errors, including: (1) "fail[ing] to acknowledge the differences" between the plaintiff's treatment relationships with the treating physician and another doctor, which could have reasonably explained the discrepancies in their opinions; (2) "undermin[ing] the [treating physician's] diagnosis" based on the ALJ's own opinion rather than on other certified medical opinions; and (3) using the opinion of another doctor, "to which [the ALJ] accorded little weight, to discredit [the treating physician's] opinion." *Id.*

5

Additionally, *Littlejohn* is factually distinguishable from the case at bar. In the instant case, the ALJ provided numerous and specific reasons that were outlined in great detail based on objective evidence or the lack thereof. The ALJ repeatedly referenced Dr. LeBlond's own medical notes to illustrate the inconsistencies between his opinion and the other record evidence, which the Fourth Circuit has upheld as proper. *Craig*, 76 F.3d at 589-90 (upholding an ALJ's rejection of a treating physician's opinion because the record contained persuasive contradictory evidence and the treating physician's own notes contradicted his opinion).

First, Dr. LeBlond stated that Jones' cervical spine bulging at C2/3 through C4/5 and her facet arthropathy "would limit her ability to lift any more than 10 pounds occassionally or anything more than light papers or files frequently" and that her "neck pain would also cause her distracting pain." (R. at 61, ECF No. 12-2; *id.* at 963, ECF No. 13-3.) However, the ALJ pointed out that Jones informed Dr. LeBlond in February 2011 – prior to Dr. LeBlond's September 2011 opinion – that her "neck pain was not as bad as her other issues." (*Id.* at 61, ECF No. 12-2; *id.* at 966, ECF No. 13-3.) Further, the ALJ relied on a cervical MRI report from February 2013 that contradicted Dr. LeBlond's opinion. (*Id.* at 61, ECF No. 12-2.) The MRI revealed, among other contradictory evidence, that there was "no cervical disc herniation," there was "no significant foraminal narrowing and no intrinsic cervical cord lesion," the cervical spine was "normally aligned," the spinal canal had a "developmentally normal size," there was "no acute cervical facet arthritis," there was "no acute cervical marrow edema," and the bulges at C2/3 through C4/5 were characterized as "mild." (*Id.*, ECF No. 12-2; *id.* at 1008, ECF No. 13-4.)

Second, Dr. LeBlond stated that Jones "suffers from lateral epicondylitis in her left elbow" and that she "would not be able to use her left arm any more than occasionally during the workday for a [sic] least some period of time in between injections." (*Id.* at 61, ECF No. 12-2; *id.* at 963, ECF No. 13-3.)  However, the ALJ noted that following a trigger point injection in the left epicondyle in or about August 2010, Jones stated in September 2010 that her left elbow pain was "doing much better," and there was little indication that she underwent another injection in either elbow through December 31, 2011, the date last insured.  (R. at 21, 62, ECF No. 12-2; *id.* at 968, ECF No. 13-3.)

Third, Dr. LeBlond stated that Jones had "crepitus, tenderness and decreased range of motion in her bilateral knees due to degenerative arthritis."  (*Id.* at 62, ECF No. 12-2; *id.* at 963, ECF No. 13-3.)  However, the ALJ cited Dr. LeBlond's contradictory records, which indicated that Jones had "good strength in the lower extremities, equal DTRs [deep tendon reflexes], intact sensation, negative straight leg raise tests, and intact station and gait."  (*Id.*, ECF No. 12-2; *id.* at 730-31, 758-59, ECF No. 13-2; *id.* at 957, 964, 966-67, ECF No. 13-3; *id.* at 991, 1000, ECF No. 13-4.)  The ALJ cited additional diagnostic images of Jones' knees from November 2010, which indicated that the medial and lateral joint compartments were well maintained on both the right and left sides, the patellofemoral compartments were normal, and there was no significant abnormality on either knee or significant change from her prior exam in September 2008.  (*Id.* 62, ECF No. 12-2; *id.* at 846, ECF No. 13-2.)

Fourth, Dr. LeBlond stated that Jones "suffers from chronic lumbar pain which is largely mechanical due to pelvic obliquity with tenderness along the SI joint," and that her "low back pain is a major problem for her and would affect her ability to work at even a sedentary job."

7

(*Id.* at 62, ECF No. 12-2; *id.* at 963, ECF No. 13-3.)  However, the ALJ again cited Dr. LeBlond's contradictory records, which generally indicated that Jones "continued to have good strength in the lower extremities, equal DTRs [deep tendon reflexes], intact sensation, negative straight leg raise tests, and intact station and gait, despite any abnormal clinical signs in the low back."  (R. at 62, ECF No. 12-2; *id.* at 730-31, 758-59, ECF No. 13-2; *id.* at 957, 964, 966-67, ECF No. 13-3; *id.* at 991, 1000, ECF No. 13-4.)

Fifth, Dr. LeBlond stated that Jones would "suffer from interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day even at a sedentary job due to her low back pain."  (*Id.* at 62, ECF No. 12-2; *id.* at 963, ECF No. 13-3.)  However, the ALJ found that the record did not contain evidence of any clinical medical condition that could reasonably produce such a significant pain as to affect concentration or evidence that she had any decline in mental status, cognition, or memory.  (*Id.* at 62, ECF No. 12-2; *id.* at 334-37, ECF No. 12-7.)

Finally, Dr. LeBlond stated that Jones "moves around with guarded slow movements and has trouble getting on and off the table," and that she walked "with an antalgic gait."  (*Id.* at 63, ECF No. 12-2; *id.* at 963, ECF No. 13-3.)  Again, the ALJ cited Dr. LeBlond's own records that show little, if any, remarks that Jones moved with guarded slow movements or that she had trouble getting on and off the table, and noted that the records generally indicated that Jones had a normal gait and station as discussed above.  (*Id.*, ECF No. 12-2.)  Overall, the ALJ afforded little weight to Dr. LeBlond's statement, because "[a]s a whole, the record, including Dr. LeBlond's records, the [Department of Veterans Affairs'] records [and rating of disability], and Dr. [Harlicia] Farley's records, as well as [Jones'] subjective remarks and activities of daily

living do not support Dr. LeBlond's opinions." (R. at 61, ECF No. 12-2.) Based on the foregoing, the court finds that the ALJ did provide specific evidence of inconsistency between Dr. LeBlond's opinion and the record as a whole.

Jones also argues that the magistrate judge ignored several errors committed by the ALJ in weighing Dr. LeBlond's opinion. First, Jones alleges that the ALJ rejected Dr. LeBlond's opinion, because he signed very few of the treatment notes and relied heavily on his staff's observations and treatment records. Other courts have found a supervising physician may express an opinion based on an assistant's or staff's observations and treatment records and still be considered as a treating source. *Benton v. Barnhart*, 331 F.3d 1030, 1036-39 (9th Cir. 2003); *see also Palmer v. Colvin*, No. 5:13-CV-126-BO, 2014 WL 1056767, at *2 (E.D.N.C. Mar. 18, 2014) (unpublished) (finding a nurse practitioner's evaluation and opinion, when supervised by a treating physician, deserved the same weight as that of a treating physician). Accordingly, the ALJ still considered Dr. LeBlond's opinion as a treating source, rather than rejecting his opinion as Jones suggests because of unsigned treatment notes and reliance on his physician's assistant. Instead, the ALJ references these unsigned treatment notes as evidence of the nature of the treatment relationship between Jones and Dr. LeBlond. 20 C.F.R. § 416.927(c)(2)(ii). Hence, Dr. LeBlond's reliance on his assistant and the fact that he signed very few of the treatment notes was a factor that the ALJ considered in affording less weight to Dr. LeBlond's opinion. Regardless, unsigned treatment notes were not the sole justification for the ALJ's credibility determination of Dr. LeBlond and they merely corroborated other substantial evidence. Thus, the court finds no error on this issue.

Second, Jones also asserts that the ALJ failed to explain why the finding that Dr. LeBlond's prescribed medical treatment for Jones was conservative weighed against Jones' credibility and Dr. LeBlond's opinion. While the ALJ did not explicitly state his rationale, the implication is that if Dr. LeBlond's opinion had been accurate and credible, then a more aggressive treatment regime would have been prescribed. *Dunn v. Colvin*, No. 14-1565, 2015 WL 3451568, at *9-10 (4th Cir. June 1, 2015) (unpublished) ("[W]hen a claimant complains that her alleged disability is so bad that she is unable to work in any job whatsoever, but the ALJ finds that the treatment was not as aggressive as one would reasonably think would be employed if the alleged disability were actually that severe, then it is reasonable for the ALJ to conclude that the conservative treatment bears on the claimant's credibility."). Therefore, the ALJ properly used the evidence of conservative treatment to weigh against Jones' credibility and Dr. LeBlond's opinion. *Id.*

Relatedly, Jones argues that the ALJ mistakenly found that Dr. LeBlond's treatment was conservative. Jones cites *Kelso v. Colvin*, No. 1:12CV331, 2014 WL 3748640, at *1 (M.D.N.C. July 30, 2014) (unpublished), to support her position. However, in *Kelso*, the plaintiff's treatment consisted of much more aggressive procedures, including repeated "epidural steroid injections, epidural lysis of adhesions, nerve root blocks, lumbar and cervical facet diagnostic blocks and radiofrequency denervations" in conjunction with "*significant doses* of narcotic analgesics and adjunctive pain medications, including gabapentin, Percocet, oxycodone, and morphine." *Id.* at *8. In the case at bar, the few injections Jones underwent appear to be trigger point injections in her elbows. (R. at 937-39, 968, ECF No. 13-3; *id.* at 994-95, 998-99, ECF No. 13-4.) Further, the medications Jones took included potassium chloride, gabapentin,

10

hydrochlorothiazide, omeprazole, Lortab, and Ultram, which do not rise to the level of "significant doses" of a combination of narcotics and pain medication. (*Id.* 964-65, ECF No. 13-3.) Ultimately, "[t]here exists no bright-line rule between what constitutes 'conservative' versus 'radical' treatment." *Gill v. Astrue*, No. 3:11CV85-HEH, 2012 WL 3600308, at *6 (E.D. Va. Aug. 21, 2012) (unpublished). In fact, other courts have found the use of trigger point injections and even epidural steroid injections, alongside pain medication to be conservative treatment. *Bays v. Colvin*, No. 2:14-CV-01564, 2015 WL 769784, at *18-20 (S.D. W. Va. Feb. 23, 2015) (unpublished); *Johnson v. Colvin*, No. 3:14-CV-00043, 2015 WL 6738319, at *13 (W.D. Va. Nov. 4, 2015) (unpublished). Moreover, Jones has not presented any evidence that her condition required surgery or hospitalization. Hence, the court finds there are ample facts and legal support for the ALJ's determination that Dr. LeBlond's treatment was conservative. Alternatively, regardless of whether the treatment was conservative or radical, the ALJ also placed emphasis on the effectiveness of the treatment and the improvement Jones reported, making further injections or other more aggressive treatment unnecessary. *Id.* Based on the foregoing, the court also finds no error on this issue.

Third, Jones argues that the ALJ erred in providing his own interpretation of Jones' diagnostic imaging and raw medical data. *See Matthews v. Astrue*, No. 8:08-1919-TLW-BHH, 2009 WL 2782088, at *8 (D.S.C. Aug. 28, 2009) (unpublished). However, the ALJ's discussion of Jones' MRI mirrors the findings of the MRI report included within the record. (R. at 61, ECF No. 12-2; *id.* at 1008, ECF No. 13-4.) Further, the ALJ also cites the "impressions section," which indicates the ALJ was referring to this particular section of the MRI report, rather than providing his own interpretation of the raw medical data. (*Id.* at 61, ECF No. 12-2;

11

*id.* at 1008, ECF No. 13-4.) Thus, the ALJ did not improperly interpret the raw medical data. Instead, the ALJ properly weighed the objective medical findings against Dr. LeBlond's opinion.

Additionally, Jones contends that the ALJ drew an impermissible inference from the fact that Jones deferred continuing elbow injections and that the magistrate judge erred in ignoring the explanation for this deferral. Jones alleges that she was financially incapable of paying for further elbow injections, which cannot be held against her or used to discredit her treating physician's opinion. *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). However, the ALJ considered her financial means because he incorporated Dr. LeBlond's statement that Jones did "not always have the money for injections." (R. at 61, ECF No. 12-2.) Further, other than Jones' testimony, there is no evidence she was unable to afford treatment. *Michaels v. Apfel*, 46 F. Supp. 2d 126, 138 (D. Conn. 1999) (undermining a plaintiff's argument that an ALJ drew an impermissible negative inference from a lack of treatment based on financial reasons when "there [was] no evidence other than Plaintiff's testimony that he lacked medical insurance and was unable to afford the treatment"). Most importantly, the ALJ noted that Jones self-reported that her elbow was "doing much better." (R. at 62, ECF No. 12-2.) Hence, even assuming Jones' allegations of financial need are true, it was proper for the ALJ to consider her self-reported subjective improvement in affording less weight to Dr. LeBlond's opinion and Jones' reasons for deferring further injections. Therefore, the court holds Jones has failed to demonstrate that the ALJ drew an impermissible negative inference from her deferring continuing elbow injections. *Brown v. Comm'r of Soc. Sec.*, No. 3:14-CV-01462, 2015 WL 4644910, at *9 (N.D. Ohio Aug. 4, 2015) (unpublished).

Relatedly, Jones argues that the ALJ's reliance on isolated references of unquantified, subjective improvement of her elbow is not a substantial basis for affording less weight to Dr. LeBlond's opinion. *Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir. 1986). However, the ALJ also considered the fact that Jones never underwent another injection in either elbow through December 31, 2011, the date last insured.[3] (R. at 21, 62, ECF No. 12-2.) The fact that Jones did not undergo another injection because of the self-reported improvement, in addition to the record as a whole, supports the ALJ's decision as to the weight of Dr. LeBlond's opinion.

Lastly, Jones argues that the ALJ improperly rejected Dr. LeBlond's opinion that Jones' pain caused interruptions in her concentration "sufficient to frequently interrupt tasks throughout the work day even at a sedentary job due to her low back pain." (*Id.* at 62, ECF No. 12-2.) Jones also alleges that the ALJ required objective evidence of pain, which is contrary to Fourth Circuit precedent. *Hines v. Barnhart*, 453 F.3d 559, 563-64 (4th Cir. 2006). However, the ALJ stated that "the record as a whole does not contain abnormal clinical signs or observations to support that the claimant appears to be in significant pain or that she has any decline in mental status, cognition, or memory." (R. at 62-63, ECF No. 12-2.) Thus, contrary to Jones' assertions, the ALJ did not require objective evidence of pain, but rather objective

---

[3] Prior to December 31, 2011, the date last insured, Jones had at least two injections that are well-documented: (1) a trigger point injection in the left elbow in or around August 2010 and (2) a steroid injection in an unknown location in September 2010. (R. at 937-39, 968, ECF No. 13-3.) Further, Jones also claims she had other injections, but these are not as well-documented: (1) repeated back injections at a rehabilitation clinic prior to August 2011, and (2) a steroid shot in the left hip presumably at the time of the left elbow injection in August 2010. (*Id.* at 931, ECF No. 13-3; *id.* at 436, ECF No. 12-7.) Still, she stated at the January 2010 hearing she had not yet undergone any epidural steroid injections in her neck or lower back. (*Id.* at 38, ECF No. 12-2.)

medical evidence of some condition that could reasonably produce such significant pain as to affect concentration. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Further, Jones has failed to direct the court to any evidence in her treatment notes or the record as a whole, such as in her reported activities of daily living, where limitations in her attention and concentration due to pain or otherwise are noted. *McFadden v. Colvin*, No. 8:14-1727-TMC, 2015 WL 5474347, at *17 (D.S.C. Sept. 17, 2015) (unpublished) (finding a plaintiff's failure to present any treatment notes referencing any limitations of attention and concentration undermined the plaintiff's argument that the ALJ's decision was not supported by substantial evidence). Thus, the court finds that the ALJ properly weighed the objective medical findings, and the lack thereof on this issue, against Dr. LeBlond's opinion.

Based on the foregoing, the court holds that Jones' objection to the magistrate judge's Report and Recommendation is without merit and that the ALJ properly evaluated the opinions of Dr. LeBlond. After a thorough review of the Report and Recommendation and the record in this case, the court adopts the magistrate judge's Report and Recommendation and incorporates it herein.

Therefore, it is

**ORDERED** that the decision of the Commissioner is affirmed.

**IT IS SO ORDERED**.

/s/ Timothy M. Cain
Timothy M. Cain
United States District Judge

Anderson, South Carolina
March 17, 2016